KEVIN V. RYAN (CSBN 118321)
United States Attorney

EUMI L. CHOI (WVBN 0722)
Chief, Criminal Division

ANDREW M. SCOBLE (CSBN 124940)
Assistant United States Attorney

450 Golden Gate Ave.
San Francisco, California 94102
Telephone: (415) 436-7249
Fax: (415) 436-7234

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ENRIQUE CHAN, ) <br> ) <br> Defendant. ) <br> _____ ) | No.: CR 05-0375 SI <br><br> [PROPOSED] ORDER FOR DETENTION PENDING TRIAL |

    This matter came before the Court on July 18, 2005 for a detention hearing. Defendant Enrique Chan appeared, in custody, with his counsel, J. David Nick; Ean Vizzi also appeared specially for the defendant. Assistant United States Attorney Andrew M. Scoble appeared for the government. Both parties proceeded by proffer. Prior to the hearing, the Court had reviewed the report of the Pretrial Services Agency, as well as the rather lengthy detention memorandum (with exhibits) submitted by the government.

    Both sides were afforded an opportunity prior to the hearing to review the bail report of the Pretrial Services Agency. The Pretrial Services Agency recommended that the defendant be detained on the ground that, should he be released, no condition or

ORDER FOR DETENTION
PENDING TRIAL
[CR 05-0375 SI]

combination of conditions would reasonably ensure his continued appearance as required. This Court agreed, finding that the government had proved by a preponderance of the evidence that no condition or combination of conditions would reasonably ensure the defendant's continued appearance as required. The Court further found that the government had proved by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community. This Order supplements the Court's findings announced from the bench and serves as written findings of fact and statement of reasons as required by 18 U.S.C. § 3142(i)(1).

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-50, sets forth four factors which the Court must consider in determining whether pretrial detention is warranted. These factors are:

(1) the nature and seriousness of the offense charged;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person including, inter alia, character, employment, family ties, community ties, financial resources, and criminal history; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court notes initially that defendant Enrique Chan is subject to a rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e), in light of the fact that a federal grand jury has indicted him for conspiring, with 18 others between approximately January 2001 and June 16, 2005, to traffic in one thousand or more marijuana plants, in violation of 21 U.S.C. § 846. The grand jury has also indicted Mr. Chan for conspiring with two others to traffic in approximately 259.8 grams of MDMA, in May 2005.

With regard to the first factor, the nature and seriousness of the offenses charged, as is noted above, a federal grand jury has indicted the defendant with two serious drug conspiracies, for a violation of 21 U.S.C. § 846. These are grave charges, involving, in the case of the marijuana trafficking conspiracy, a mandatory minimum sentence of ten years' imprisonment, with a possible maximum of life imprisonment.

Turning to the second factor, the weight of the evidence, this is the least important of the factors, and the bail statute neither requires nor permits a pretrial determination of guilt. United States v. Gebro, 948 F.2d 1118, 1121-22 (9th Cir. 1991). The government proffered that the charged conspiracy involved large amounts of marijuana, and that Enrique Chan engaged in a series of dealings with undercover agents. In the course of undercover meetings and telephone conversations in 2004 and 2005, the government has proffered, the defendant negotiated for the smuggling of large amounts of cash from the United States into Canada; the distribution of MDMA; the transportation of cocaine from South America; and the acquisition of fraudulent documents. The government has also proffered that in a July 9, 2004 meeting, Enrique Chan offered to supply up to 30 pounds of marijuana per month at a price of $3300 per pound. The government also proffered that on May 20, 2005, the defendant sold an undercover agent nearly 1,000 tablets of MDMA (known in drug parlance as a "boat" of MDMA) for $4,000. The government has also proffered that in a followup undercover meeting on June 7, 2005, Enrique Chan again discussed money laundering, and claimed to own a penthouse apartment in Shanghai, China with a value of $1.2 million. (See Exhibit B to United States' Memorandum.)

Concerning the history and characteristics of the defendant, and the nature and seriousness of the danger posed by the defendant's release, the Court notes a number of troubling facts. First, the government claims that the scope of the charged conspiracy encompasses an estimated 18,000 marijuana plants with a value possibly exceeding $15 million – and that these estimates are based only on the marijuana grow sites which are known to the government through, for instance, the execution of search warrants. At any rate, the evidence establishes that there are large sums of money, described by Enrique Chan, which are not accounted for. The government proffered that Enrique Chan's tax returns do not describe his income and assets; it noted that for tax years 1999 through 2003, his reported income does not exceed $20,000 per year. On the other hand, the government has proffered, Enrique Chan stated to an undercover agent that, upon the sale

of real property (which the government has determined to be located at 2020 Clement Street, San Francisco), he and his partners each realized $400,000 in profit. The government also proffered that Enrique Chan asked for assistance in bulk cash smuggling from the United States into Canada, possibly as much as $200,000 to $500,000 several times per month. The government has also proffered that the defendant sought to obtain fraudulent identification documents for a Korean girlfriend and for himself. In this connection, the evidence indicates that the defendant has previously demonstrated his willingness and ability to obtain fraudulent identification, in the form of a California Driver's License, in co-defendant Edward Park's name, which expired in 1999. (See Exhibit F to United States' Memorandum.)

The Court is also concerned by evidence that Enrique Chan poses a danger to the community. The Court takes note of the proffered evidence, from the government's wiretap investigation, that Chan and several co-conspirators planned to harm an individual whom they believed to have cheated them of proceeds of their marijuana conspiracy. Specifically, the government proffered that on April 29, 2005, Chan told a co-conspirator that "certain people just can't be trusted," that "you gotta be strong," and that "you've gotta lay it down!" Chan subsequently asked whether his associates could "pick up some ties straps, long ones." He also suggested to an associate that they "just meet up somewhere and then stun him in the car," and that they "[t]hrow him in the car and keep stunning him." As noted above, these statements were made in reference to a co-conspirator believed to have cheated Chan and his fellows of proceeds of their marijuana conspiracy. The statements and their intent are corroborated by the search warrants executed at Enrique Chan's and Darrick Hom's residences, which resulted in the seizure of an instructional videotape and extra cartridges for a Taser, as well as the Taser itself.

The statements proffered by the government are taken from intercepted telephone calls involving Enrique Chan, Darrick Hom, and Edward Park. The Court further notes that, according to the government's proffer, on April 29, 2005, Edward Park suggested

ORDER FOR DETENTION
PENDING TRIAL
[CR 05-0375 SI]                                              4

that they find a remote place for putting their plan into operation. Park also asked Hom to get a "shovel," a "gag" and "some long tie straps." These intercepted conversations were sufficiently alarming to cause the government to notify the intended target of the plot that his life appeared to be in danger.

      This is not the only evidence of defendant Chan's willingness to use violence to enforce payment for drugs. The government has also proffered intercepted telephone calls of May 21, 2005, in which co-defendant Faisal Gowani asked whether Chan had a "contingency plan" for dealing with customers who failed to pay for their marijuana. Chan informed Gowani that Chan could "refer someone to go down there" and "muscle in on him" – but noted that this person would probably demand half of the debt in payment. Chan also stated that "the guy that usually takes care of something like that, you know, he does it for a lot more, you know what I mean." Gowani responded that he understood, but was "kinda hoping that you had a contingency plan that could just help me out on this one situation, and I'll try not to ask for a favor again."

      The record is replete with instances of Enrique Chan's access to violence. It also includes the following statement made by Enrique Chan to an undercover agent on May 20, 2005: "I got guys in Asia that can take care of getting my money back, you know. Because in Asia it's not like here. They don't play around. If I want my money back in Asia, they would just kidnap your family until you pay it back. You know. It's just – it's straight up, you know."

      Finally, the record before the Court indicates that Enrique Chan has a large amount of assets available, including the apartment in Shanghai, China, plus access to large amounts of cash smuggled to China and Canada. The Court notes that this conclusion is corroborated to some extent by the record of travel abroad – including travel to Canada and to China – which the defendant has described to the Pretrial Services officer. The Court finds that the equity in real property which has been offered by Enrique Chan's proposed sureties (his mother and his uncle) could be repaid by Enrique Chan if he were outside the United States.

ORDER FOR DETENTION
PENDING TRIAL
[CR 05-0375 SI]                                                                 5

Given all of the factors discussed above, the Court finds that the government has established by clear and convincing evidence that no condition or combination of conditions will reasonably ensure the safety of the community. The Court also finds that the government has established by a preponderance of the evidence that no condition or combination of conditions will reasonably ensure the defendant's continued appearance as required.

Accordingly, pursuant to 18 U.S.C. § 3142(i), it is ORDERED that:

(1) The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3) On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Dated: July 22, 2005

HON. NANDOR VADAS
United States Magistrate Judge