IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ENRIQUE CHAN, et al.,<br><br>    Defendants.<br>_____/ | No. CR 05-00375 SI<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION FOR IMPOSITION OF GAG<br>ORDER AGAINST THE UNITED STATES** |

On December 1, 2005, the Court heard oral argument on defendants' motion for imposition of a gag order against the United States. After careful consideration of the papers and the arguments of counsel, the Court hereby DENIES the motion.

**BACKGROUND**

On June 16, 2005, a federal grand jury returned a sealed indictment charging defendant Enrique Chan and 18 other individuals with conspiring, between approximately January 2001 and June 16, 2005, to cultivate and traffic in one thousand or more marijuana plants in violation of 21 U.S.C. § 846. The grand jury also charged Chan with conspiring with defendants Richard Wong and Thy Quang Nguyen to possess with intent to distribute and distribute MDMA (ecstasy) in violation of 21 U.S.C. § 846. Finally, the grand jury charged defendants Richard Wong and Phat Van Vuong with conspiring to engage in money laundering in violation of 18 U.S.C. § 1956(h).

On June 22, 2005, government agents executed 23 federal search warrants. Three of the search warrants were for cannabis clubs in San Francisco, California. These search warrants authorized the search for and seizure of evidence, fruits and instrumentalities of violations of 21 U.S.C. §§ 841(a) and 846, and of

18 U.S.C. §§ 1956 and 1957. During the searches agents found, *inter alia*, 1400 marijuana plants. Scoble Decl. ¶ 5. That same day, the United States obtained a criminal complaint for the arrest of defendant Vince Ming Wan on the charge of conspiring with the 19 already-indicted individuals to cultivate and traffic in one thousand or more marijuana plants.

On June 23, 2005, defendant Chan and approximately 12 co-defendants made their initial appearances in federal court. According to the Declaration of Assistant United States Attorney Andrew Scoble, prior to the June 23, 2005 appearance, Mr. Scoble obtained an order unsealing the previously-sealed indictment, as well as an order authorizing a limited unsealing of the criminal complaint and search warrant affidavit issued with respect to defendant Vince Ming Wan. *Id.* at ¶ 6. The government also received permission to redact portions of the search warrant affidavit detailing telephone conversations intercepted pursuant to Court-authorized wiretaps, as well as information pertaining to the identity of a confidential informant. *Id.*

On June 23, 2005, after the defendants made their initial appearance in court, the United States Attorney's Office held a press conference regarding the charging of this case. *Id.* at ¶ 7. Mr. Scoble states he is informed and believes, based upon his conversations with Luke Macaulay, the Public Affairs Officer for the U.S. Attorney's Office, that the government made available at the press conference the unsealed indictment and the unsealed, redacted affidavit.

After the June 22, 2005 searches and the June 23, 2005 press conference, a number of newspapers and television stations reported on the searches and the filing of the criminal complaint. Defendant has submitted 11 articles dating between June 22 and June 29, 2005 regarding the searches and the case. Defendant's Motion, Ex. 1-3, 4-9, 11-13.[1] Defendant has also submitted a copy of the U.S. Attorney's June 23, 2005 press release, Ex. 4, and a September 6, 2005 profile of U.S. Attorney Kevin Ryan that appeared in the San Francisco Daily Journal, a local legal newspaper. Ex. 14.

On November 8, 2005, defendant Enrique Chan filed a Motion for Imposition of Gag Order Against the United States. Some, but not all, of Chan's co-defendants have joined in the motion.

**DISCUSSION**

---

[1] One article, dated June 9, 2005, is about medical marijuana use and is not about this case. Defendant's Motion, Ex. 10.

Defendants request that a gag order be imposed "as to the United States, its agents and witnesses" prohibiting them from making extrajudicial statements that a person "knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding" in this case. Defendants' Motion at 6, 14. Defendants contend that various government officials have made prejudicial and inflammatory comments that are likely to taint the jury pool and threaten to prejudice the defendants' rights to a fair trial.

A gag order is a form of prior restraint and is subject to strict scrutiny. *See Levine v. United States District Court*, 764 F.2d 590, 595 (9th Cir. 1985). A court may impose an order restricting the speech of trial participants if (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *Id.*

Applying this standard to the record before the Court, the Court concludes that a gag order is not warranted because there is neither a "clear and present danger" nor a "serious and imminent threat" to defendants' rights to a fair trial. The news articles submitted by defendants do not contain prejudicial or inflammatory statements by the government; instead, the statements attributed to government officials are largely factual descriptions of the nature of the case, the searches, and/or the indictments.[2] In addition, some of the statements that defendants object to, such as a statement that the defendants are part of an "Asian mafia," were not made by government officials, but rather by third parties who have no affiliation with the government. *See, e.g.*, Defendants' Motion Ex. 3 (*Bay Guardian* article attributing statement to Kris Hermes, legal director of patients advocacy group: "Hermes says the federal accusations against an allegedly organized group of Asian men is intended to undermine support for medical cannabis by playing on fears of Asian mafia involvement.").[3]

Moreover, the fact that the statements at issue were made many months before trial weighs against finding that the defendants' rights to a fair trial are being threatened. All of the statements were made in June

---

[2] Defendants also object to the fact that several of the news articles quote a taped conversation by Chan that will likely be introduced into evidence. Although the Court concludes that the publicity the case has received thus far does not pose a threat to defendants' rights to a fair trial, the Court recognizes that such a danger could arise if evidence such as the taped conversation is the subject of much publicity, particularly if such publicity occurs close to trial.

[3] The Court notes that in several instances defendants have either misquoted the statements that were actually made, or inaccurately attributed statements made by non-government officials to government officials.

3

2005, with the exception of a September 6, 2005 profile of U.S. Attorney Kevin Ryan in the local legal newspaper, and there is currently no trial date. Thus, the instant situation is distinguishable from those where courts have imposed gag orders directed at curbing publicity immediately before or during a trial. *See Levine*, 764 F.2d at 598 ("[T]he district court's order was aimed expressly at publicity during, or immediately before, trial. As the district court noted, this type of publicity has a greater potential for prejudice than publicity months in advance of trial."); *see also id.* (noting other cases in which courts have appropriately imposed gag orders due to "circus-like environment" surrounding highly publicized trials).

The Court also concludes that defendants have not established that less restrictive alternatives, such as voir dire, would not eliminate any bias caused by pretrial publicity. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976) (stating that "searching questioning of prospective jurors . . . to screen out those with fixed opinions as to guilt or innocence" would be an appropriate alternative to a restraining order). As stated *supra*, the record before the Court does not establish that the government has engaged in any inflammatory or improper pretrial publicity. Based upon that record, the Court finds that any possible prejudice flowing from the June and September 2005 publicity is de minimis and could be eliminated through voir dire.

The Court is mindful of defendants' concerns and expects that all counsel will abide by the Rules of Professional Conduct. In addition, as the Court noted at the hearing, the Court expects that the parties will advise their agents and other individuals associated with the case that they should refrain from making statements to the media that could in any way have a prejudicial effect in this matter. Finally, if, during the pendency of this case, defendants believe that government officials or their agents are making improper comments to the public regarding this case, defendants may raise the issue with the Court and/or file an appropriate motion.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendants' motion. [Docket No. 188].

**IT IS SO ORDERED.**

Dated: December 2, 2005

*Susan Illston*

4

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

———————————————
SUSAN ILLSTON
United States District Judge